UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| GIBSON WAKA, | CASE NO. 3:08 CV 1438 |
| Plaintiff, | JUDGE DAVID A. KATZ |
| v. | |
| | OPINION AND ORDER |
| ZENA HOLDINGS, et al., | |
| Defendants. | |

On June 13, 2008, pro se plaintiff Gibson Waka, dba Nwoka Management & Premier Auto Service, filed this action against Zena Holdings, LLC and Terry Netterfield.[1]  He claims the defendants discriminated against him in violation of the Fair Housing Act (FHA), 42 U.S.C. § 3602 et seq.   Seeking in excess of $5 million compensatory and $5 million punitive damages, he asserts this court's jurisdiction pursuant to 42 U.S.C. § 3613.

*Background*

Mr. Waka leased property from Terry Netterfield dba Zena Holdings, LLC and

---

[1] The rule in the Sixth Circuit is that a corporation cannot appear in federal court except through an attorney. Ginger v. Cohn, 426 F.2d 1385, 1386 (6th Cir.1970); United States v. 9.19 Acres of Land, 416 F.2d 1244, 1245 (6th Cir.1969). Therefore, even if the case had merit, it is unlikely Mr. Waka could represent Nwoka Management pro se.

Zena Holdings for his "business establishment" located at 2735 Dorr Street, Unit C, Toledo, Ohio. He maintains that he had an agreement with the defendants to pay rent on a quarterly basis. On or about April 15, 2005, however, the defendants locked Mr. Waka out of his business without prior notice. When he inquired as to the basis for the defendants' action, plaintiff was advised that Mr. Netterfield "had already mailed the new key for the new lock on the building to Plaintiff." (Compl. at ¶12.) Three days later, he received the new key and adds that, "[c]ontrary to false assertions made by Defendants, Plaintiff was not delinquent on rents at the time for [sic] the lockout. Plaintiff's rent was paid in quarterly payments through the end of September 2005." (Compl. at ¶ 14.)

In spite of Mr. Waka's declarations, the electrical service to his unit was disconnected and re-routed by the defendants on September 15, 2005. Mr. Waka complains that this denied him access to heat, water and light and interfered with his business. Also, "[t]hrough no fault of Plaintiff, Defendant changed the locks on Plaintiff's place of business from mid September 2005 until Plaintiff met with Defendant Netterfield on or about October 15, 2005." (Compl. at ¶ 16.) It was during the meeting of October 15, 2005, that Mr. Waka was notified that the defendants planned to "close down 2735 Dorr St. Unit C as a rental property rather than repair it."(Compl. at ¶ 22.) To counter to Mr. Netterfield's proposition, Mr. Waka proposed "that if he came to Plaintiff's place of business on the 16th day of October 2005 Plaintiff would have his fourth quarterly installment of rent for him/it." (Compl. at ¶ 23.)

Two days after the meeting, and one day after promising to provide a rental payment, Mr. Waka attempted to present a check for the next three months rent to Mr. Netterfield. The check was refused. Instead, Mr. Netterfield promised to follow up with the

2

plaintiff regarding his decision about the property.

On or about October 28, 2005, Mr. Netterfield telephoned Mr. Waka to advise that his lease payments would be required on a monthly basis starting January 2006. Mr. Waka believed that the decision was unfair. It is his belief that the defendants "retaliated" against him by posting an eviction notice, an action which they successfully pursued through the Municipal Court of Toledo.

After his eviction was sustained by the court on January 11, 2006, Mr. Waka made several attempts to retrieve vehicles and equipment he left on the property. Some attempts were made without notice and other times he tried to contact the defendants' attorney to secure entry. There was a dispute regarding the defendants' perception that Mr. Waka was attempting to still run his business after being evicted from the premises. The last action Mr. Waka identifies was a telephone call from the defendants' attorney, Bruce Schoenberger, on February 24, 2006, wherein "[w]ithout provocation, Mr. Schoenberger announced that he was moving forward with draconian measures."(Compl. at ¶ 54.) Mr. Waka neither explains what "draconian measures" the defendants pursued, nor does he include those actions as part of his FHA claim.

*Standard of Review*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), a "district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit or no longer open to discussion." Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999); see Hagans v. Lavine, 415 U.S.

3

528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that patently frivolous claims divest the district court of jurisdiction); <u>In re Bendectin Litig.</u>, 857 F.2d 290, 300 (6th Cir. 1988) (recognizing that federal question jurisdiction is divested by obviously frivolous and unsubstantial claims).

*Fair Housing Act*

The purpose of the Fair Housing Act is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The statute provides, in relevant part that:

> it shall be unlawful–
>
> > (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a <u>dwelling</u> to any person because of race, color, religion, sex, familial status, or national origin.
> >
> > (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a <u>dwelling</u>, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(emphasis added). Under the FHA, a "dwelling" is defined as "[a]ny building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." 42 U.S.C. § 3602(b).

It is apparent on the face of the complaint that Mr. Waka is not complaining about any action the defendants took with regard to his "dwelling." If any discriminatory activity took

4

place, it did not affect Mr. Waka's opportunity to seek fair housing as that term is defined by the statute. Although section 3604(a) applies principally to the sale or rental of dwellings, even its broadest reach only encompasses discriminatory practices that affect detrimentally the availability of housing to minorities and thereby make housing more difficult to obtain. See Eva v. Midwest National Mortgage Bank, Inc.,143 F.Supp.2d 862, 881 (N.D. Ohio 2001) (no discrimination in the sale or rental of housing where there was no literal "sale or rental" of a "dwelling"); Laufman, et al. v. Oakley Building & Loan Co., et al., 408 F.Supp. 489, 492 (S.D.Ohio 1976)(only prohibits conduct that "'otherwise make(s) (dwellings) unavailable'")(alterations in original). The complaint fails to allege that the defendants' actions violated an activity protected by the FHA.

Based on the foregoing, this action is dismissed. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

/s/ David A. Katz

DAVID A. KATZ
UNITED STATES DISTRICT JUDGE

---

[2]28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.